FINAL DECISION
I. Background
This case arises out of Mark Stanchik’s termination from employment by Oneida Police Chief Rich Van Boxtel. Mr. Stan-chik was a sergeant in the Oneida Police Department when it came to light he was involved in financial impropriety in his role as the Chairman of the Oneida Housing Authority Board of Commissioners. After investigation Chief Van Boxtel concluded there was misconduct and that it warranted termination from employment. Mr. Stanehik appealed to the Oneida Police Commission. After a hearing, the Police Commission reduced the discipline to a six-month suspension without pay and demotion to patrol officer. Both the Police Chief and Mr. Stanehik appealed the Oneida Police (Commission’s decision. We reverse the Police Commission’s decision and affirm Chief Van Boxtel’s decision to ter-mínate Mr, Stanchik’s employment.

*217
A. Jurisdiction

This case comes before this Appellate body as an appeal from an original hearing body, the Oneida Police Commission (OPC). Any person aggrieved by a final decision in a contested case can seek Oneida Tribal Judicial System review under Sec. 1.11-1 of the Oneida Administrative Procedures Act. In addition, the Oneida Law Enforcement Ordinance, Chapter 37, permits officers to appeal disciplinary actions to the Oneida Tribal Judicial System under Sec. 37.9-9. Both Chief Van Boxtel and Mr. Stanchik timely filed appeals. Therefore, jurisdiction is proper with the Oneida Tribal Judicial System, Appellate Court.

B. Factual Background

This case involves conduct by Mr. Stan-chik in his role as the Chairman of the Oneida Housing Authority (OHA) Board of Commissioners. During his term as Chairman of the OHA, it was apparently common practice for OHA Commissioners to use OHA credit cards for personal use under an arrangement where the Commissioner would have a standing “payback” agreement with the OHA.[1] Under the payback agreement the personal charges on the OHA credit cards were paid back to the OHA through automatic payroll deductions from the Commissioner’s pay. Mr. Stanchik allegedly had such an agreement in place with the OHA.[2]
Sometime in 2007 the United States Department of Housing had questions concerning the fiscal year 2006 audit of the OHA. The Oneida Nation initiated its own internal investigation which raised concerns about the financial dealings at OHA. Part of the investigation revealed the payback arrangement between Mr. Stanchik and the OHA and that Mr. Stanchik’s OHA credit card had been used for personal items. Around this same time, a citizen’s complaint about Mr. Stanchik’s involvement was made to the Police Commission.
When these findings started coming to light in summer of 2007, consequences followed. The Oneida Business Committee dissolved the OHA Board of Commissioners by OBC Resolution 7-18-07.
On July 23, 2007, the Oneida Police Commission directed Chief Van Boxtel to place Mr. Stanchik on administrative leave as permitted under the Law Enforcement Ordinance. A private firm was hired to investigate whether Mr. Stanchik’s conduct at the Oneida Housing Authority violated any Oneida Police Department rules.
On July 26, 2007, Mr. Stanchik was placed on administrative leave. The private investigation was completed in October, 2007. A report was submitted to the Police Commission. The investigation found that Mr. Stanchik had used his OHA credit card for personal use as reflected in a December 2006 credit card statement in Mr. Stanchik’s name.
Chief Van Boxtel terminated Mr. Stan-chik’s employment on December 29, 2007 based on Mr. Stanchik’s violation of OPD rules prohibiting unbecoming conduct and *218 immoral conduct (OPD SOP 03-05-01.004.5.1 and 03-05-01.004.5.2). Mr. Stanchik appealed the termination to the Police Commission pursuant to Sec. 37.9-1(c). A full hearing was held on May 7, 2008.
At the hearing, testimony covered several relevant points:
• There was credible testimony from Wendy Chamon that Mr. Stanchik still owed, at the time of the hearing, $1,800 to the OHA for personal charges made while he was an OHA Commissioner. Mr. Stanchik denied this but offered no additional proof or sworn testimony to support his denial.
• Ms. Charnon also testified that there were charges by Mr. Stanchik which included a satellite dish and cash advances taken at the Mason Street Casino.
• Mr. Stanchik stated that the charges made by him with the OHA credit cards were of a personal nature but were subject to a payback agreement.
• Chief Van Boxtel reviewed Mr. Stan-chik’s personnel file before terminating his employment and found that Mr. Stanchik had been an officer in good standing without any disciplines in his file. That testimony was the only discussion of Mr. Stanchik’s record of service.

C. Relevant law

The relevant law at issue is 37.9-7 of the Oneida Law Enforcement Ordinance:
Just Cause Standard Applied to Commission Deliberations. The Commissioners shall base their decisions regarding a disciplinary action upon the just cause standard.
(a)Whether the law enforcement officer could reasonably be expected to have had knowledge of the probable consequences of the alleged misconduct.
(b) Whether the procedure the law enforcement officer allegedly violated is reasonable.
(c) Whether the Police Chief, before filing charges against the law enforcement officer, made a reasonable effort to discover whether the law enforcement officer did, in fact, violate a procedure.
(d) Whether the investigation was fair and objective.
(e) Whether the Police Chief discovered substantial evidence that the law enforcement officer violated the procedure as described in the charges filed against the law enforcement officer.
(f) Whether the Police Chief is applying the rule of order fairly and without discrimination against the law enforcement officer.
(g) Whether the proposed discipline is reasonable as it relates to the seriousness of the alleged violation and to the law enforcement officer’s record of service with the Oneida Police Department.
Chief Van Boxtel relied on the following two provisions of the Oneida Police Department SOPs, § 03-05-01.004.5.1 and § 03-05-01.004.5.2:
• 5.1 Unbecoming Conduct: Officers will conduct themselves at all times, both on and off duty, so as not to reflect disfavor on the Department. Conduct unbecoming an officer shall include that which brings the Department into disrepute or reflects discredit upon the officer as a member of the Department, or that which impairs the operation of efficiency of the Department or officer.
• 5.2 Immoral Conduct: Officers shall not participate in any incident involving moral turpitude which impairs their ability to *219 perform as law enforcement officers or causes the Department to be brought into disrepute.

D. Positions of the Parties

Due to both Chief Van Boxtel and Mr. Stanchik appealing, there are three positions before us: 1) Mr. Stanchik’s; 2) Chief Van Boxtel’s and 3) The Oneida Police Commission decision. We summarize each position below.

1. Mr. Stanchik’s position.

Mr. Stanchik’s position is that he has done nothing wrong. He asserts that the payback agreement between him and the OHA shows that although he did make personal charges with the OHA credit card, he was given the authority to do so and regularly paid back the charges. He asserts he talked to the OHA Financial Manager and that this arrangement was authorized and permitted.

2. Chief Van Boxtel’s position.

Chief Van Boxtel argues that Mr. Stan-chik committed a serious lapse in judgment that reflects poorly on himself and on the Oneida Police Department. Chief Van Boxtel argues Mr. Stanchik’s conduct re-fleets poorly on Mr. Stanchik’s professional police career and has threatened the public trust and confidence in the Oneida Police Department. As such, Mr. Stanchik’s behavior discredits the department and is severe enough to justify termination from employment.

3. Oneida Police Commission decision.

The Oneida Police Commission reviewed the evidence presented at the hearing and concluded that while Mr. Stanchik did engage in serious misconduct by using the OHA credit card for personal use, his record of service meant that termination from employment was not justified. Therefore, the Police Commission reduced the termination to a six-month suspension without pay and demotion in rank.
II. Issues
Was Chief Van Boxtel’s original decision to terminate Mr. Stanchik’s employment “reasonable” as that term is used in Sec. 37.9—7(g)?
III. Analysis
Was Chief Van Boxtel’s original decision to terminate Mr. Stanchik’s employment “reasonable” as that term is used in Sec. 37.9-7(g)?
Yes. Chief Van Boxtel appropriately applied the just cause factors and made a reasonable decision to terminate Mr. Stanchik’s employment. The OPC arbitrarily and capriciously overturned and modified the Chiefs decision on the basis of Mr. Stanchik’s “record of service” without explaining how or why his record of service justified such an action.
Before we turn to a detailed analysis of the merits, we briefly discuss the standard of review. We apply an arbitrary and capricious standard of review to the OPC decision. Under the arbitrary and capricious standard, a reviewing court must consider whether an original hearing body’s decision was based on consideration of relevant facts and evidence and whether there had been a clear error of judgment. The court may reverse only when the original hearing body offers a decision so implausible that it could not be attributed to the evidence and facts presented. Thus, the scope of review under arbitrary and capricious standard is narrow, and a court may not substitute its judgment for that of the original hearing body. Oneida Bingo & Casino v. Parker, 10 O.N.R. 3-97, 04-AC-012, — Am. Tribal Law - *220 (10/22/2004); Cornelius v. OPD, 07-AC-020, — Am. Tribal Law —- (6/20/2008).
The OPC is a finder of fact. Unless the Police Commission made a clear error of judgment, this Appellate Court cannot overturn their decision. We find the OPC made such an error when it cited, without any discussion or rationale, Mr. Stanchik’s “record of service” as a basis for reversing Mr. Stanchik’s termination from employment. Chief Van Boxtel’s original determination was reasonable within the meaning of that term in Sec. 37.9-7(g).
We now review application of the just cause standard to the facts of this case. The Oneida Law Enforcement Ordinance states:
37.9-7. Just Cause Standard Applied to Commission Deliberations. The
Commissioners shall base their decisions regarding a disciplinary action upon the “just cause” standard.
(a) Whether the law enforcement officer could reasonably be expected to have had knowledge of the probable consequences of the alleged misconduct.
(b) Whether the procedure the law enforcement officer allegedly violated is reasonable.
(c) Whether the Police Chief, before filing charges against the law enforcement officer, made a reasonable effort to discover whether the law enforcement officer did, in fact, violate a procedure.
(d) Whether the investigation was fair and objective.
(e) Whether the Police Chief discovered substantial evidence that the law enforcement officer violated the procedure as described in the charges filed against the law enforcement officer.
(f) Whether the Police Chief is applying the rule or order fairly and without discrimination against the law enforcement officer.
(g)Whether the proposed discipline is reasonable as it relates to the seriousness of the alleged violation and to the law enforcement officer’s record of service with the Oneida Police Department.
We review the seven factors listed in Sec. 37.9-7.
A. Whether the law enforcement officer could reasonably be expected to have had knowledge of the probable consequences of the alleged misconduct.
This factor weighs in favor of Chief Van Boxtel. As a police officer since 1996, Mr. Stanchik could reasonably be expected to know that receiving money through the OH A credit card account (even with a payback agreement in place) for personal expenses would appear improper, especially when the individual involved is a police officer. (Police officers are trusted with tremendous power and authority in our system of justice and therefore they have a tremendous responsibility to remain worthy of receiving that power and trust.)
The fact that Mr. Stanchik continued to owe $1,800 in May, 2008 (from a December, 2006 statement) supports the type of easily foreseeable problems with this arrangement. What is the public perception while this money continues to be owed? It is likely to be negative. It is common sense that what might be generously viewed as a short-term “loan” from the OHA slowly turns into an unauthorized “gift” when money remains unpaid for so long.
B. Whether the procedure the law enforcement officer allegedly violated is reasonable.
This factor weighs in favor of Chief Van Boxtel. The rules governing officer conduct and the oath taken by Mr. Stanchik are reasonable. The two SOP provisions *221 prohibit unbecoming conduct and immoral conduct by Oneida police officers. The two rules at issue are:
• 5.1 Unbecoming Conduct: Officers will conduct themselves at all times, both on and off duty, so as not to reflect disfavor on the Department. Conduct unbecoming an officer shall include that which brings the Department into disrepute or reflects discredit upon the officer as a member of the Department, or that which impairs the operation of efficiency of the Department or officer
• 5.2 Immoral Conduct: Officers shall not participate in any incident involving moral turpitude which impairs their ability to perform as law enforcement officers or causes the Department to be brought into disrepute.
C. Whether the Police Chief, before filing charges against the law enforcement officer, made a reasonable effort to discover whether the law enforcement officer did, in fact, violate a procedure.
This factor weighs in favor of Chief Van Boxtel. An independent investigation was undertaken by an outside firm. The Chief did not rely on the OHA audits or other outside reports.
The hearing testimony from Chief Van Boxtel also shows that there was originally a charge that Mr. Stanchik had received OHA stipends in addition to his pay as a police officer, or in effect “double-dipping.” After diligent investigation by Chief Van Boxtel, it was shown that Mr. Stanchik did not accept OHA stipends in addition to his pay as a police officer. As a result, that allegation was dropped.
D. Whether the investigation was fair and objective.
This factor weighs in favor of Chief Van Boxtel. The investigation was fair and objective, A third party investigative firm was used to gather and report facts. The investigation revealed that Mr. Stanchik used his OHA credit card for various personal expenses including cash advances.
E. Whether the Police Chief discovered substantial evidence that the law enforcement officer violated the procedure as described in the charges filed against the law enforcement officer.
This factor weighs in favor of Chief Van Boxtel. There is substantial evidence Mr. Stanchik violated department rules when he used the OHA credit card for personal items. Mr. Stanchik doesn’t deny that he did these things; he argues that the agreement was permissible and authorized by the OHA. However, there is a lack of evidence to support Mr. Stanchik’s assertions. Mr. Stanehik did not testify at the hearing before the Police Commission. Furthermore, there was no testimony or other evidence supporting Mr. Stanchik’s claims that the payback agreement was lawful and authorized. Mr. Stanchik did not offer any testimony from the Financial Manager; he did not offer the agreement itself; nor were there any minutes or resolutions from the OHA Board authorizing a payback agreement.
F. Whether the Police Chief is applying the rule or order fairly and without discrimination against the law enforcement officer.
This factor weighs in favor of Chief Van Boxtel. We find the Chief applied the rules fairly and without discrimination against the law enforcement officer. There is an allegation by Mr. Stanchik that another officer who was suspended at the same time received a much lighter punishment. However, there is no record established on this point. While there was *222 some attempt to make a record at the hearing, we have insufficient information to evaluate this claim. There is no evidence as to what the other charges were or how they were handled.
G. Whether the proposed discipline is reasonable as it relates to the seriousness of the alleged violation and to the law enforcement officer’s record of service with the Oneida Police Department.
This is the factor where the parties focused most of their argument and where there is the most disagreement between Chief Van Boxtel, Mr. Stanchik and the Oneida Police Commission. Each party has a different view of the proper outcome. The Chief argues for termination, the Oneida Police Commission issued a six-month suspension and demotion, and Mr. Stanchik argues he should be fully reinstated without punishment.
In our view, this factor is where the Oneida Police Commission erred. In its review of the first six just-cause factors, the OPC made findings consistent with Chief Van Boxtel’s. It agreed Mr. Stan-chik should have known what he was doing was wrong; it agreed there was substantial evidence of a violation; it agreed the investigation was fair and objective; it found the rule was being applied without discrimination.
It noted the severity of the conduct. It concluded that Mr. Stanchik’s use of the OHA credit card was a “violation of the public trust granted to all law enforcement officers.” (OPC Dec. at 12). The OPC did not accept Mr. Stanchik’s argument that his conduct was authorized by the payback agreement likening such an argument to the unpersuasive “following-orders” argument used in similar situations. The OPC was also concerned that Mr. Stanchik still believes he did nothing wrong. The OPC went so far as to question Mr. Stanchik’s character based on his continued insistence he did nothing wrong.
Despite all of these findings and statements, the OPC then, with only five words of explanation “[gjiven his record of service,” greatly plays down all of its previous statements and reduces Chief Van Boxtel’s decision from termination to a six-month suspension and demotion from sergeant to patrol officer. There is no explanation or rationale as to why Mr. Stanchik’s record of service overcomes all of the evidence and reasoning that suggests this was a very serious offense.
The OPC owed a certain amount of deference to the Chief of Police as described in Sec. 37.9-7(g). That section requires the OPC to weigh whether the proposed discipline was “reasonable.” Chief Van Boxtel made a reasonable decision to ter-mínate Mr. Stanchik’s employment. In all of the steps leading up to the last just-cause factor, the OPC found that the elements supported the Chiefs action. The OPC overruled and modified the Chiefs action without explaining how or why Mr. Stanchik’s record of service led them to do this. It is this lack of explanation which brings the OPC decision into the realm of arbitrary and capricious.
Arbitrary and capricious means a decision of unreasonable action without consideration or in disregard of facts or law without determination principle. Wheelock, v. Oneida Recreation Dept., 04-AC-019, 11 O.N.R. 3-19, 2-25, - Am. Tribal Law- (3/25/2005). There is a certain amount of disregard of the facts here. The OPC found the first six out of seven just-cause factors weighing in favor of Chief Van Boxtel and then on the unexplained basis of “record of service” the OPC overruled the Chiefs decision to terminate Mr. Stanchik’s employment. In *223 addition to disregarding the facts, the OPC decision is without a determining principle, There is no explanation as to why Mr. Stanchik’s record of service outweighs the gravity of the situation, the gravity with which the OPC agreed. To avoid being arbitrary and capricious, the OPC at least should have articulated some reason as to why Mr. Stanchik’s record of service justified overturning Chief Van Boxtel’s decision.
The absence of such an explanation is particularly striking in light of a recent case where an officer’s record of service was not enough to overcome her lapse in judgment. In Cornelius v. Oneida Police Dept. 07-AC-020, — Am. Tribal Law -(6/20/2008) we upheld Officer Cornelius’ termination from employment for lying to another police officer. However, Ms. Cornelius’ work history was exemplary and her outstanding service record was made a part of the hearing record. She received very favorable letters commending her work from Brown County officers involved in the Brown County Drug Task Force and from the State of Wisconsin Department of Justice. Yet in reviewing her case, the OPC chose not to modify the Chiefs decision to terminate Ms. Cornelius’ employment.
Ms. Cornelius and Mr. Stanchik both are accused of conduct unbecoming an officer and discrediting the Oneida Police Department. Given the different circumstances in each case, it is entirely possible that different outcomes could be reached by the OPC. However, the OPC did not explain why or how Mr. Stanchik’s record of service weighed in favor of overturning his termination. The Cornelius decision supports our finding that the lack of such explanation makes the decision to overturn the termination arbitrary and capricious. Nevertheless, without any explanation for this Court to review, the OPC’s decision to overturn the Chiefs termination of Mr. Stanchik’s employment cannot be sustained.
The reasonableness of Chief Van Box-tel’s decision is best explained in his own words. At the hearing he stated:
As a police officer ... we’re given this immense amount of trust and credibility, and the expectation from our community, the people that we serve, is that we do the right thing no matter what. With Mark using the Housing Authority credit card, which is guaranteed by somebody else, in making personal expenses and getting personal gains from that, that’s in direct violation of that public trust. Once we lose that trust ... I think it’s very difficult and almost impossible to get that back. As the entire thing unfolded, that public trust that was there is gone. They were taking things from the Housing Authority for their own personal gain, and whether or not there’s a payback plan, they’re using it as a personal bank and that’s not correct either. We or anyone, as a general community member, [don’t] have that ability to use a credit card and pay it back without any interest for their own personal gain. That’s not right.
May 7, 2008 Hearing Transcript at 44-15.
IV. Decision
We overturn the decision of the Oneida Police Commission and affirm Chief Van Boxtel’s decision to terminate Mr. Stan-chik’s employment. It is so ordered.

. On June 15, 2006, the OHA Board passed the Oneida Housing Authority Travel Policy (OHA Travel Policy). This policy states that “OHA owned credit cards shall be used for business purposes only and not for personal use.” Mr. Stanchik’s conduct of using the credit card for personal use apparently took place both before and after this policy was enacted.

. Although the payback agreement itself was not entered into evidence, there was credible testimony from Wendy Charnon that the agreement existed and neither paily contests its existence.